UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CARLOS VEGA,

               Plaintiff,

    -against-

**OPINION AND ORDER**
**12-CV-6158 (SJF)**

HEMPSTEAD UNION FREE SCHOOL
DISTRICT, DAGOBERTO ARTILES and
CHY DAVIDSON (sued in their individual
and official capacities pursuant to 42 U.S.C.
§ 1983),

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   MAY 22 2014   ★

               Defendants.

**LONG ISLAND OFFICE**

-------------------------------------------------------------X
FEUERSTEIN, District Judge:

       Defendants Hempstead Union Free School District ("District"), Dagoberto Artiles

("Artiles"), and Chy Davidson ("Davidson") (collectively, "defendants") have moved for

judgment on the pleadings, pursuant to Federal Rule of Civil Procedure ("FRCP") 12(c), on

plaintiff Carlos Vega's ("plaintiff") amended complaint. For the following reasons, defendants'

motion is **GRANTED** and plaintiff's amended complaint is dismissed in its entirety.

**I.    Background**

       Plaintiff, a math teacher for twenty-four (24) years, has been employed by defendant

District for sixteen (16) years and was tenured in 1999. Amend. Compl. ¶¶ 6, 7. Plaintiff is of

Hispanic ethnicity and speaks fluent English and Spanish. *Id.* at ¶ 8. The District is an employer

as defined by 42 U.S.C. § 2000e. *Id.* at ¶ 9. Since 2011, the District has employed defendant

Artiles as a principal in one of its four (4) high schools. *Id.* at ¶10. As principal, Artiles is

responsible for personnel decisions in the District, including hiring, firing, evaluating and

disciplining employees. *Id.* at ¶11. Defendant Davidson was employed by the District as a

principal in one of its high schools from approximately 2006 to 2011 and was responsible for personnel decisions, including hiring, firing, evaluating and disciplining employees. *Id.* at ¶¶ 14, 15.

## II. Discussion

### A. Legal Standard for 12(c) Motions

"After the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). " 'In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.' " *Byrd v. City of New York*, No. 04 Civ. 1396, 2005 WL 1349876, at *1 (2d Cir. June 8, 2005) (quoting *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999)). However, it is "well settled that conclusory allegations merely stating general legal conclusions necessary to prevail on the merits of a claim, unsupported by factual averments will not be accepted as true." *ECOR Solutions, Inc. v. Malcolm Pirnie, Inc.*, No. 02 Civ. 1103, 2005 WL 1843253, at *3 (N.D.N.Y. July 29, 2005). On FRCP 12(b)(6) motions, the court must assess the legal feasibility of the complaint and whether a plaintiff pleaded claims for which he or she is entitled to discovery. *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000); *Chance*, 143 F.3d at 701. The Supreme Court has held that a "plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), the Supreme Court held that courts should entertain a motion to dismiss by following a two-pronged approach:

-2-

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

The Federal Rules of Civil Procedure require a "short plain statement of the claim showing that the pleader is entitled to relief." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8(a)(2) requires that a pleading set forth facts that the pleader is entitled to relief and provide a defendant with fair notice. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

## B.    Plaintiff's Amended Complaint[1]

### 1. Plaintiff's Title VII and § 1983 Claims Against the District

#### a.    Legal Standard

Title 42 U.S.C. § 2000e-2(1)(a) ("Title VII") provides that it "shall be an unlawful employment practice for an employer– (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." The language of the statute "is not limited to 'economic' or 'tangible'

---

[1] Defendants contend that some of the facts supporting plaintiff's Title VII and 42 U.S.C. § 1983 claims are time barred. Mem. in Supp. pp. 7-8. Title VII requires a plaintiff to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the last discriminatory act. 42 U.S.C. § 2000e-5(e)(1). Plaintiff filed his charge of discrimination with the EEOC on August 8, 2011 and thus, any events which occurred prior to October 12, 2010 are time-barred with respect to his Title VII claim. Claims brought pursuant to 42 U.S.C. § 1983 are governed by a three-year statute of limitations period. *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002). Plaintiff filed his complaint on December 14, 2012. Thus, any allegations in support of his § 1983 claim which precede December 14, 2009 are time-barred. Plaintiff concurs with these dates. Mem. in Opp. p. 6.

discrimination. The phrase 'terms, conditions, or privileges of employment' evinces a

congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in

employment.' " *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986) (quoting *Los

Angeles Dep't of Water and Power v. Manhart*, 435 U.S. 702, 707 n.13 (1978)).

In a Title VII discrimination case "where there is no direct or overt evidence of

discriminatory conduct," a court applies the "three part burden shifting framework of *McDonnell

Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)." *Weinstock v. Columbia University*, 224

F.3d 33, 42 (2d Cir. 2000).

"First, the plaintiff must establish a *prima facie* case of discrimination by showing that:

(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an

adverse employment action; and (4) the circumstances give rise to an inference of

discrimination." *Id.* at 42 (citing *McDonnell Douglas*, 411 U.S. at 802).

Once a plaintiff articulates a prima facie case of discrimination under the statute, the

"burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason"

for the disparate treatment. *McDonnell Douglas Corp*, 411 U.S. at 802. " '[T]he defendant must

clearly set forth, through the introduction of admissible evidence,' reasons for its actions which,

*if believed by the trier of fact*, would support a finding that unlawful discrimination was not the

cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)

(quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981)). The burden

then shifts back to plaintiff to prove " 'that the proffered reason was not the true reason for the

employment decision,' and that race was." *Id.* (quoting *Burdine*, 450 U.S. at 256) (internal

citations omitted). The "ultimate burden of persuading the trier of fact that the defendant

-4-

intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253.

The "same analytical framework applies to . . . disparate treatment claims whether brought under § 1983 or Title VII." *Das v. Consol. Sch. Dist. of New Britain*, 369 F. App'x 186, 188 (2d Cir. 2010). Once "action under color of state law is established . . . an equal protection claim parallels . . . a Title VII claim, [e]xcept, of course, that unlike a Title VII claim a Section 1983 claim can be brought against individuals." *Feingold v. New York*, 366 F.3d 138, 159 & n.20 (2d Cir. 2004). "The elements of one are generally the same as the elements of the other and the two must stand or fall together." *Id.* at 159. *See Tilghman v. Waterbury Bd. of Educ.*, 154 F. App'x 221, 223 (2d Cir. 2005) ("[T]he core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981 or the Equal Protection Clause."); *Patterson v. County of Oneida*, 375 F.3d 206, 225-27 (2d Cir. 2004) (holding that the core substantive standards for a Title VII claim apply to claims brought under the Equal Protection Clause, except for differences between the two as to: (1) statutes of limitation; (2) municipal liability; (3) individual liability; and (4) §1983 claims require a showing of intentional discrimination whereas a Title VII claimant need only establish negligence).

### b. Analysis

The first and second factors are undisputed. Plaintiff is of Hispanic ethnicity and is therefore a member of a protected class. As to the second factor, plaintiff is a tenured math teacher who has been employed by defendant District for sixteen (16) years during which he received positive reviews and evaluations. Thus, he was qualified for his position.

The third inquiry is whether plaintiff suffered an adverse employment action. A plaintiff sustains an adverse employment action if he or she endures a "materially adverse change" in the terms and conditions of employment. *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). "An 'adverse employment action' is one which is 'more disruptive than a mere inconvenience or an alteration of job responsibilities.' " *Feingold,* 366 F.3d at 152 (quoting *Galabya*, 202 F.3d at 640). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Crady v. Liberty Nat. Bank and Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993).

"A showing of disparate treatment—that is, a showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group'—is a recognized method of raising an inference of discrimination for purposes of making out a prima facie case." *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). A plaintiff relying on disparate treatment evidence "must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Graham,* 230 F.3d at 39.

Plaintiff's complaint alleges that in or around October 2010, plaintiff had no classroom for three periods of algebra classes and was forced to teach in the high school's media center, which had no blackboard and was located in a noisy area. Amend. Compl. ¶ 31. None of plaintiff's similarly situated non-Hispanic co-workers were without a classroom. *Id.* at ¶ 32. Although an unused classroom was available first period, defendant Davidson denied plaintiff's

written request to use the room. *Id.* at ¶ 33-35. Without a classroom or blackboard, plaintiff was denied the same access to teaching tools that similarly situated non-Hispanic teachers enjoyed. *Id.* at ¶ 37. None of plaintiff's similarly situated non-Hispanic co-workers were denied use of a classroom and therefore, plaintiff's request was denied with discriminatory intent and no rational basis. *Id.* at ¶¶ 36, 38. The District's actions in denying plaintiff a classroom was selective and arbitrary. *Id.* at ¶ 40.

"Mere undesirable classroom assignments generally do not rise to the level of an adverse employment action." *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 256 (E.D.N.Y. 2012). *See Galabya*, 202 F.3d at 640 (holding that "[a]s a matter of law, the disparity in working conditions . . . may be characterized as minor" and is insufficient to establish an adverse employment action); *Klein v. New York Univ.*, 786 F. Supp. 2d 830, 847 (S.D.N.Y. 2011) ("Undesired office assignments are not adverse employment actions.") (citing *Cunningham v. New York State Dept. of Labor*, 326 F. App'x 617, 619-20 (2d Cir. 2009); *Stoddard v. Eastman Kodak Co.*, 309 F. App'x 475, 479 (2d Cir. 2009)). Thus, plaintiff's complaint that he was assigned to the media room does not rise to the level of an adverse employment action.

The amended complaint also alleges that on or about June 24, 2011, with discriminatory intent, the District attempted to transfer plaintiff from the high school to a middle school, which would have been a setback to plaintiff's career. *Id.* at ¶¶ 41, 42. On or about July 11, 2011, plaintiff approached the Assistant Superintendent to object to the proposed involuntary transfer based on his seniority and percentage of passing students. *Id.* at ¶¶ 43, 44. The Assistant Superintendent told plaintiff he would think about it. *Id.* at ¶45. On August 8, 2011, plaintiff filed a formal charge with the EEOC against the District, alleging racial discrimination pursuant

to Title VII. *Id.* at ¶46. When plaintiff received his schedule of classes for the 2011/2012 school year on August 27, 2011, he was scheduled to remain at the high school; the District did not send written confirmation that the transfer was rescinded until September 21, 2011. *Id.* at ¶¶ 47, 48. Plaintiff alleges he was treated selectively and irrationally. *Id.* at ¶50.

A " 'pure lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action.' " *Gordon v. New York City Bd. of Educ.*, No. 01 Civ. 9265, 2003 WL 169800, at *6 (S.D.N.Y. Jan. 23, 2003) (quoting *Pimental v. City of New York*, No. 00 Civ. 326, 2002 WL 977535, at *3 (S.D.N.Y. May 14, 2002). *See Galabya*, 202 F.3d at 641 (holding that plaintiff's transfer from one special education school to another was not an adverse employment action where there was no evidence that the new assignment was "less prestigious, materially less suited to his skills and expertise, or materially less conducive to career advancement"). Moreover, plaintiff complains of a transfer that never took place and therefore cannot qualify as an adverse employment action.

The amended complaint also alleges that the District, in an attempt to isolate and segregate plaintiff based on his ethnicity, assigned him to a classroom with a banner over the door which read "University of Puerto Rico." *Id.* at ¶¶ 51, 54. Other classroom had banners; but plaintiff felt singled out and segregated due to his being Hispanic while similarly situated non-Hispanic co-workers did not have banners which coincided with their ethnicity and/or nationality. *Id.* at ¶¶ 52, 53. These allegations do not state an adverse employment action. As the complaint states, other classrooms had banners and thus, plaintiff's classroom was not singled out by the District. Additionally, the complaint contains no allegations about the content of the other banners or the co-workers' ethnicities and therefore, raises no inference of

-8-

discrimination by the District.

The complaint also alleges that when plaintiff attempted to use his password to log onto the District's computer to enter his student's grades, the password was deactivated, which was done with wilful and malicious intent. *Id.* at ¶¶ 55-57, 61. Similarly situated co-workers who were not Hispanic did not have their passwords deactivated. *Id.* at ¶¶ 58, 61. When plaintiff asked a co-worker to assist him, the co-worker's password worked. *Id.* at ¶59.

"[N]ot everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir. 1996). Similar to plaintiff's claim about the University of Puerto Rico banner, his contentions about the deactivated password do not meet the standards of *Twombly* and *Iqbal* because they are devoid of facts that tend to show that the District deactivated plaintiff's computer password because he is Hispanic.

Furthermore, plaintiff's allegations concerning the comparators are entirely conclusory. To be similarly situated and qualify as a comparator, even at the motion to dismiss stage, "other employees must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's, without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it." *Mazzella v. RCA Global Communications, Inc.*, 642 F. Supp. 1531, 1547 (S.D.N.Y. 1986). The amended complaint contains no factual averments regarding the similarities between himself and his non-Hispanic comparators save for the reference to a male African-American co-worker. *See Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 58-60 (2d Cir. 2010) (applying *Twombly* and *Iqbal* and holding that the complaint's allegations regarding plaintiff's comparators were factually

deficient); *Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 815 F. Supp. 2d 679, 697 n.10 (S.D.N.Y. 2011) ("[P]ursuant to *Ruston*, Plaintiffs must allege specific facts that suggest that it is plausible that the given comparators are similarly situated to Plaintiffs under whatever may be the appropriate standard for similarity . . . .").

Because plaintiff has not demonstrated that he suffered an adverse employment action, he has not established a prima facie case of discrimination and consequently, his Title VII and § 1983 claims against the District must fail. Accordingly, for the foregoing reasons, the District defendant's motion for judgment on the pleadings on plaintiff's Title VII and § 1983 claims is granted.

### 2.    Plaintiff's § 1983 Claim Against Artiles and Davidson

#### a.    Legal Standard

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the law." U.S. Const. amend. XIV § 1. "To state a race-based claim under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against him on the basis of his race." *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000).

"Under § 1983, a plaintiff may bring a "civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." *Alexander v. City of New York*, 957 F. Supp. 2d 239, 247 (E.D.N.Y. 2013) (quoting *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993)).

### b.    Claim Against the Individual Defendants in their Official Capacities

"When a plaintiff sues a municipality or an individual in his official capacity for discrimination under § 1983, he must show that the discriminatory conduct occurred pursuant to a municipal policy, custom, or practice." *Hawkins v. County of Oneida*, 497 F. Supp. 2d 362, 378 (N.D.N.Y. 2007) (citing *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004)). *See Monell v. Dep't of Social Serv. of City of New York*, 436 U.S. 658, 692 (1978) (holding that 42 U.S.C. § 1983 imposes liability on "a government that, under color of some official policy, "causes" an employee to violate another's constitutional rights"). A municipality's custom or policy may be established by, *inter alia*, demonstrating that its "practice, as opposed to its formal policy, is to engage in . . . constitutional violation[s]." *Green v. City of New York*, 465 F.3d 65, 80 (2d Cir. 2006) (citing *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 125-26 (2d Cir. 2004)).

As an initial matter, "[s]tate employment has generally been deemed sufficient to render the defendant a 'state actor.' " *Roddini v. City Univ. of New York*, 02 Civ. 4640, 2003 WL 435981, at *5 (S.D.N.Y. Feb. 21, 2003). Defendants Artiles and Davidson are employed by the District, a municipal defendant, and thus, both are state actors. The complaint, however, fails to allege any facts demonstrating that the District has a policy, custom or practice of discriminating against its employees of Hispanic origin. Accordingly, defendants' motion for judgment on plaintiff's § 1983 claim against Artiles and Davidson in their official capacities is granted.

### c.    Claim Against Artiles and Davidson in their Individual Capacities

To state a prima facie case under the Fourteenth Amendment's Equal Protection Clause,

plaintiff must demonstrate that he: "(1) is a member of a protected class; (2) is otherwise similarly situated to members of the unprotected class; (3) suffered an adverse employment action; (4) was treated differently from members of the unprotected class; and (5) the defendant acted with discriminatory intent." *Anderson v. State of New York Office of Court Admin. of Unified Court System*, 614 F. Supp. 2d 404, 426 (S.D.N.Y. 2009). Because § 1983 liability is predicated on conduct which subjects a complainant to a deprivation of rights secured by the Constitution or laws, *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976), the " 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986) (quoting *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)).

With respect to Davidson, the complaint alleges that he denied plaintiff's request to use an available classroom instead of the media room for his first period class. Amend. Compl. ¶¶ 33-35. Plaintiff claims that Davidson denied the request with discriminatory intent because none of plaintiff's similarly situated non-Hispanic co-workers were denied a classroom. *Id.* at ¶ 36. Additionally, Davidson, acting under color of state law, wilfully, maliciously and with the intent to cause harm directly participated in violating plaintiff's federal equal protection rights. *Id.* at ¶¶ 38, 39. The complaint also alleges that Davidson, under color of state law, knowingly violated plaintiff's equal protection rights by attempting to transfer plaintiff without a rational reason and based on plaintiff's Hispanic origin. *Id.* at ¶ 49.

As discussed above with respect to the District, plaintiff has not established that he suffered an adverse employment action nor has he alleged plausible facts tending to show that he is similarly situated in all respects to his non-Hispanic co-workers, as required to state an equal

-12-

protection claim. Moreover, plaintiff's allegations do not establish that Davidson's conduct was on account of plaintiff's ethnicity. Accordingly, the complaint does not state a claim against Davidson in his individual capacity and defendants' motion for judgment on the pleadings as to Davidson is granted.

With respect to Artiles, the complaint alleges that in or around February 2013, Artiles was appointed to observe plaintiff's performance in the classroom. Amend. Compl. ¶ 83. In an act of retaliation for plaintiff's filing the EEOC charge against the District, Artiles gave plaintiff a performance score of 1.4 out of a maximum of 4.00; other teachers were not subjected to the same evaluation process. *Id.* at ¶ 84. During his sixteen (16) years with the District, plaintiff consistently received satisfactory or outstanding reviews and never received a negative evaluation until he filed the EEOC charge. *Id.* at ¶¶ 85-87. The negative evaluation shows Artiles' bad faith intent to directly cause plaintiff harm and violate his equal protection rights. *Id.* at ¶ 90.

"There is no authority for a retaliation claim under the Fourteenth Amendment when the protected activity is a complaint of race or age discrimination." *Roberts v. Judicial Dept.*, No. 99 Civ. 014, 2001 WL 777481, at *4 (D. Conn. Mar. 28, 2001). *See Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996) ('[W]e know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination."). Accordingly, defendants' motion for judgment on the pleadings on the claim against Artiles in his individual capacity is granted.

-13-

### 3.    Retaliation Claims

#### a.    Legal Standard

A Title VII retaliation claim is evaluated under the three-step, burden-shifting framework used for an adverse employment claim, as established by *McDonnell Douglas*, 411 U.S. at 792. "The Supreme Court has defined an 'adverse employment action' in the Title VII retaliation context (distinct from and broader than the standard in the Title VII discrimination context) to mean an action that is 'materially adverse' and that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' " *Humphrey v. County of Nassau,* No. 06 Civ. 3682, 2009 WL 875534, at *14 (E.D.N.Y. Mar. 30, 2009) (quoting *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). The elements of a retaliation claim under Title VII are: "(1) a plaintiff was engaged in activity protected by the relevant statute; (2) the alleged retaliator knew that plaintiff was involved in protected activity; (3) an adverse decision or course of action was taken against plaintiff; and (4) a causal connection exists between the protected activity and the adverse action." *Liparulo v. Onondaga Central School Dist.*, No. 06 Civ. 1068, 2009 WL 3790187, at *4 (N.D.N.Y. Nov. 12, 2009).

#### b.    Analysis

As to the first element, plaintiff was engaged in an activity protected by Title VII, i.e., the filing of a complaint with the EEOC alleging racial discrimination in employment. As to the second element, whether defendants were aware that plaintiff filed a charge with the EEOC, the complaint alleges that the acts were in response to plaintiff's filing, which presupposes that defendants were aware of the filing.

As to the third element, whether an adverse decision or course of action was taken against

-14-

plaintiff, the amended complaint alleges that on or about November 2011, the curriculum was changed in one of plaintiff's College Prep math classes without plaintiff being advised of the change, while all other non-Hispanic math teachers were notified. Amend. Compl. ¶¶ 63, 64. This neglect to advise plaintiff was done with the purpose of discriminating against him on the basis of his ethnicity and in retaliation for filing the EEOC charge in violation of Title VII. *Id.* at ¶ 66.

The complaint also alleges that during the 2011-2012 school year, plaintiff was assigned classes with students who were known to have excessive absences. *Id.* at ¶ 68. This was done based on plaintiff's ethnicity and in retaliation against plaintiff for filing his EEOC charge against the District. *Id.* at ¶ 72.

On or about March 12, 2012, the sum of $738.92 was wrongly deducted from plaintiff's paycheck for sick days. *Id.* at ¶ 73. Plaintiff complained to the District's Business Office, which realized it made a mistake and refunded the difference to plaintiff by September 2012. *Id.* at ¶¶ 73, 74, 75. Denying plaintiff his sick time was in retaliation for his filing the EEOC charge. *Id.* at ¶ 76.

On or about June 18, 2012, plaintiff received a letter from the District Office of Personnel stating that his request to transfer to the Academy of Math & Science, which had a Hispanic principal, was approved. *Id.* at ¶¶ 77, 79. Plaintiff, however, never requested a transfer and thus, the District fabricated a transfer request to segregate plaintiff based on his Hispanic ethnicity in violation of Title VII. *Id.* at ¶¶ 78, 80, 81.

None of the above claims qualify as an adverse decision or course of action taken against plaintiff in retaliation for filing the EEOC charge. As discussed above, mere undesirable

-15-

classroom assignments and disparities in working conditions generally do not rise to adverse employment conditions. Nor would the alleged acts, none of which resulted in tangible harm to plaintiff, dissuade another worker from making or supporting a charge of discrimination. Indeed, by plaintiff's own admission, after he filed the EEOC charge, his potential transfer to the middle school was rescinded. Amend. Compl. ¶¶ 41-47. Moreover, plaintiff's retaliation claims suffer from the same deficiencies as his Title VII claims, i.e., the lack of a connection between the alleged retaliatory acts and his ethnicity. Accordingly, based on plaintiff's failure to establish an adverse action taken against him for filing the charge, defendants' motion for judgment on the pleadings is granted.

### III. Conclusion

For all of the forgoing reasons, defendants' motion for judgment on the pleadings is **GRANTED**. Plaintiff's amended complaint is dismissed in its entirety and the Clerk of the Court shall close this case.

**SO ORDERED**.

Dated: May 22, 2014
      Central Islip, New York

s/ Sandra J. Feuerstein
_____
Sandra J. Feuerstein, U.S.D.J.
